FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SARAH LYNN HILL, | No. 2:17-cv-00071-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | ECF Nos. 17, 18 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 17) and grants Defendant's Motion (ECF No. 18).

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## CHILDHOOD DISABILITY INSURANCE BENEFITS

The Social Security Act provides disabled child's insurance benefits based on the earnings record of an insured person who is entitled to old-age or disability benefits or has died. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350(a). The same definition of "disability" and five-step sequential evaluation outlined above governs eligibility for disabled child's insurance benefits. *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(1)-(2). In addition, in order to qualify for disabled child's insurance benefits several criteria must be met. 20 C.F.R. §§ 404.350(a)(1)-(5). As relevant here, if the claimant is over 18, the claimant must "have a disability that began before [she] became 22 years old." 20 C.F.R. §§ 404.350(a)(5).

# ALJ'S FINDINGS

In July 2013, shortly after she turned age eighteen, Plaintiff applied for Title II child disability insurance benefits, otherwise known as disabled adult child benefits, as the survivor of her father, who died in March 2013. Tr. 212-15. In September 2013, Plaintiff also applied for Title XVI supplemental security income (SSI) benefits. Tr. 216-21. Plaintiff alleged a disability onset date of January 1, 2007 (eleven years old) in the SSI application, Tr.258, and June 9, 2013 in the insurance benefits application, Tr. 230. Plaintiff's applications were denied initially and upon reconsideration. Tr. 112-48. Plaintiff appeared for a consolidated hearing without representation before an administrative law judge (ALJ) on January 13, 2015. Tr. 45-70. *Id*. A supplemental hearing was held on June 23, 2015, where Plaintiff was represented by counsel. Tr. 71-111. On July 29, 2015, the ALJ denied Plaintiff's claims. Tr. 15-34.

The ALJ noted that Plaintiff was born on June 9, 1995 and had not attained the age of twenty-two as of January 1, 2007, the alleged onset date. Tr. 20. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 8, 2013, "the date Plaintiff attained the age of eighteen, and the

beginning of the relevant period."[1]  Tr. 20.  At step two, the ALJ found Plaintiff

has the following severe impairments: depression and anxiety.  Tr. 21.  At step

three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

21.  The ALJ then concluded that Plaintiff has the RFC to perform a full range of

work at all exertional levels, but with the following nonexertional limitations:

> the claimant is able to perform simple, routine, repetitive tasks with no detailed work and only ordinary production requirements.  The claimant can have brief, superficial contact with the general public and occasional, brief, non-collaborative contact with co-workers.  The claimant would work better with things than with people.

Tr. 23.  At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 27.  At

step five, the ALJ found that considering Plaintiff's age, education, work

experience, and RFC, there are other jobs that exist in significant numbers in the

national economy that the Plaintiff can perform such as cleaner and kitchen helper.

Tr. 28.  The ALJ concluded Plaintiff has not been under a disability, as defined in

the Social Security Act, since June 8, 2013 through the date of the decision.  Tr.

28.

---

[1] Under SSA regulations, "[a]n individual attains a given age on the first moment

of the day preceding the anniversary of his birth corresponding to such age."  20

C.F.R. §§ 404.2(c)(4), 416.120(c)(4).

ORDER - 8

On December 16, 2016, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her child disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 17. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's application for disabled child's insurance benefits;

2. Whether the ALJ properly weighed Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the lay witness statements;

4. Whether the ALJ properly weighed the medical opinion evidence;

5. Whether the ALJ properly determined Plaintiff does not meet a Listing; and

6. Whether the ALJ properly determined the RFC.

*See* ECF No. 17.

## DISCUSSION

### A. Disabled Child's Insurance Benefits and the Record Predating June 8, 2013

Plaintiff contends the ALJ failed to properly analyze Plaintiff's claim for benefits under the disability insurance program because "ALJ failed to consider

ORDER - 9

evidence of Plaintiff's impairments and symptoms prior to her eighteenth birthday." ECF No. 17 at 10. Plaintiff also contends by limiting the time period under review, the ALJ "denied Ms. Hill the opportunity to present the full longitudinal record of her mental impairment." ECF No. 17 at 11.

To be eligible for disabled child's insurance benefits, Plaintiff must "at the time [her] application is filed," be "under a disability . . . which began before [s]he attained the age of 22." 42 U.S.C. § 402(d)(1)(B)(ii). This statute has been interpreted to mean that the child's disability must have commenced prior to her attainment of age 22 and continued, without interruption, through the date of her application. *Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1986). Plaintiff's date of application was July 10, 2013.

The consolidated administrative hearing on both benefits applications evidences the ALJ's, counsel's, and experts' confusion about the relevant time periods at issue. *See* Tr. 51 (ALJ suggesting "this is a continuing disability review and a Title XVI case so the protective filing date here and the applicable date would be July 10th of 2013 for an onset rather than the 2007 date."); Tr. 75-76 (ALJ checking and clarifying "[s]o it's not a review. It's just a [sic] Application for Child Disability Benefits that would go back prior to her 22nd birthday…."); Tr. 76 (ALJ stating relevant dates are July 10, 2013 back to January 1, 2007); Tr. 77 (ALJ stating "for a longitudinal history…those earlier records will be helpful,

ORDER - 10

but I really think the relevant dates we're looking at is when she turned 18 and that would be in 2013."); Tr. 77 (ALJ affirmatively answering the medical expert's question, "[s]o we're just looking at this as an adult?"). After discussion, the ALJ erroneously indicated "the relevant dates [sic] we're looking at is when she turned 18." Tr. 77.

The ALJ's decision does not set forth a separate time period relevant to the disabled child's insurance benefit claim. Instead, the ALJ found that the "beginning of the relevant period," was "June 8, 2013, the date the claimant attained the age of eighteen." Tr. 20. The ALJ ultimately found: "[t]he claimant has not been under a disability, as defined in the Social Security Act, from June 8, 2013, through the date of this decision." Tr. 28. The ALJ's decision notes Plaintiff's February 2013 hospitalization for suicidal ideation was "prior to the claimant's attaining the age of eighteen," Tr. 22, and does not specifically address the assessment of Kevin O. Heid, Ph.D. at the Psychiatric Center for Children and Adolescents while Plaintiff was hospitalized. *See* Tr. 534-59; ECF No. 17 at 17 (contending "[t]he ALJ mistakenly gave no consideration to Dr. Heid."). In the portion of the decision titled "Issues," the ALJ stated a more expansive ruling, which was not set forth in the findings section: "[a]fter careful consideration of all the evidence, the undersigned concludes the claimant has not been under disability

within the meaning of the Social Security Act from *January 1, 2007*, through the date of this decision." Tr. 18 (emphasis added).

There is no requirement either in statute, regulation, or case law, that the period under consideration by the ALJ on the disabled child insurance benefits claim is limited solely to that between 18 and 22. *See Schold v. Astrue*, 2013 WL 1090793, n.3 (W.D. Wash. Feb. 11, 2013) (unpublished). The fact the record evidence predated her eighteenth birthday was irrelevant as the only time period limitations in a disabled child insurance benefits claim are that disability must have begun prior to age twenty-two and must have been ongoing at the time of application. Nonetheless the Court concludes the ALJ's consideration of the evidence reflects harmless error.[2] First, the time period deemed relevant by the ALJ, June 8, 2013 through July 29, 2015, encompassed the date Plaintiff's child

---

[2] Defendant contends it was harmless error because "Plaintiff already received benefits for the period until her 18th birthday." ECF No. 18 at 2. The record suggests Plaintiff received child death benefits until she turned eighteen (June 9, 2013) on account of her father's death in March of the same year. Tr. 76-77; ECF No. 17 at 3. Defendant fails to explain how the payment of a death benefit relates to the separate issue of the determination of disability benefits.

ORDER - 12

benefit application was filed, July 10, 2013. Thus, the ALJ's findings included the critical time periods for both benefits applications.

Second, though Plaintiff contends the ALJ denied her the opportunity "to present the full longitudinal record," the record belies this contention. The record before the ALJ included evidence dating back to 2004. During administrative proceedings, Plaintiff's attorney presented evidence from the entire record. Tr. 208 (pre-hearing memorandum); Tr. 110-11 (administrative hearing).

Finally, Plaintiff also contends the ALJ "limit[ed] review to evidence dating after her 18th birthday." ECF No. 17 at 11. Contrary to this contention, at the administrative hearing, earlier records were discussed and the ALJ orally explained these "earlier records will be helpful." Tr. 77. Although the ALJ's decision reflects a more heavy reliance upon evidence dating after Plaintiff's eighteenth birthday, the decision also refers to portions of the record dating prior to Plaintiff's 18th birthday and reflects consideration of this evidence. *See*, *e.g.*, Tr. 26 (discussing range of GAF scores). The ALJ's decision also repeatedly states the ALJ considered "all the evidence" and "the entire record." Tr. 18, 20, 23, 27; *see also* Tr. 27 (indicating the RFC "is supported by a complete review of the record.").

The ALJ is not required to provide a robust discussion of every piece of evidence proffered, which in this case spans over a ten-year period. *See, e.g.,*

*Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)). The ALJ need only explain why significant or probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Dr. Heid's assessment concludes that "it is noteworthy" that Plaintiff's two hospitalizations (in 2008 and in 2013) followed explosive arguments with her stepmother, Tr. 537, 535, during a time she reported "considerable family discord." Tr. 536. Both were single crises predating her disability applications. After her February 2013 hospitalization she changed her living circumstances, Tr. 733 (progress note dated June 30, 2014), and suicidal ideations subsided. *See*, *e.g.*, Tr. 611, 612, 615, 617, 620, 677. Though the ALJ did not discuss Dr. Heid's assessment in the decision, Plaintiff has not demonstrated how Dr. Heid's opinion supports greater restrictions than the ALJ found. The assessment does not present any opinion as to Plaintiff's functional limitations nor does it support a finding of total disability. Accordingly, the Court concludes any error in the ALJ's consideration of the evidence prior to Plaintiff's eighteenth birthday did not materially impact the decision and the ALJ's decision reflects adequate consideration of the record as a whole.

**B. Plaintiff's Symptom Claims**

Plaintiff contends the ALJ failed to rely upon convincing reasons supported by substantial evidence in discrediting Plaintiff's symptom claims. ECF No. 17 at 15.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, inter alia, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The Court finds the ALJ provided several specific, clear, and convincing reasons for the ALJ's determination that Plaintiff's symptom complaints were "not entirely credible." Tr. 24.

*1. Source of Symptoms*

First, the ALJ noted that the record "shows significant conflict with her mother and an unstable home environment." Tr. 24. Clinical psychologist Ellen Rozenfeld, Ed.M., Psy.D., testified as a medical expert at the initial hearing and the

ALJ accorded her opinion great weight. Tr. 23. Dr. Rozenfeld testified "the claimant has a history of having significantly problematic interactions within the home setting. This [sic] did in fact, carry those limits into a school setting. There are reports of multiple psychosocial stressors . . . . and it was noted that she was acting impulsively due to the current psychosocial stressors." Tr. 53; *see also* Tr. 563-87 (February 2013 hospital treatment records describing chief complaint as "didn't feel safe at home secondary to suicidal ideation" and "extensive family conflicts seem to be a major issue as well"); Tr. 753 (stating Plaintiff relates anger and irritability to stress in living environment, stressors at home, and strained relationship with mother's partner). Dr. Rozenfeld also opined that at the same time, Plaintiff "seems to be able to relay words appropriately and meaningfully with people outside the home and as well as her friends." Tr. 54. Plaintiff contends the conflict with Plaintiff's mother is symptomatic of mental illness, not divergent to it. ECF No. 17 at 13. There is substantial evidence supporting the reasonably drawn inference that Plaintiff's psychological symptoms were not solely the result of an impairing psychiatric condition, but rather exacerbated by the effects of significant personality conflicts and instability in the home.

### 2. Inconsistent Medical Evidence

Next, the ALJ concluded there was "nothing in the record that supports a finding that the claimant would be unable to perform simple, routine, repetitive

tasks with occasional contact with others." Tr. 24. While subjective symptom testimony cannot be rejected solely because it is not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining severity of symptoms and their disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ specifically cited medical treatment records from June 2013 through June 2015 where Plaintiff was observed to have unremarkable, stable, or mild findings on mental health status examinations. Tr. 24-25. Plaintiff concedes the records show a "calmer period" in the treatment record where "Ms. Hill is doing well." ECF No. 17 at 14. Yet Plaintiff contends (without citation to any specific record evidence) that the ALJ failed to consider the "intensive therapy sessions, repeated hospitalizations, and doctor's evaluations" that support her credibility. ECF No. 17 at 15. Regardless of evidence from an earlier period of time that could be interpreted more favorably to Plaintiff, the periods of stability cited by the ALJ, which occurred during the alleged period of disability, establish inconsistencies between plaintiff's complaints and the objective medical evidence. Such inconsistencies are clear and convincing reasons to discount plaintiff's credibility. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir.1999).

### 3. Conservative Treatment

Despite history of having been prescribed multiple medications, *see, e.g.,* Tr. 620-623 (prescribing Busapar, Zyprexa, and Tegretol), and having noted benefit from medication, *see, e.g.,* Tr. 677, 753, the ALJ also noted that in late 2014 into 2015 Plaintiff was not taking psychotropic medications. Tr. 25 (citing Tr. 803, 806, 810). A conservative course of treatment may undermine assertions of disabling symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (conservative treatment can suggest a lower level of functional limitation, justifying adverse credibility determination). It was reasonable for the ALJ to consider conservative treatment measures as a reason to discount Plaintiff's testimony that her mental impairments were so severe as to be completely disabling. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). This was a clear and convincing reason to find Plaintiff's symptom complaints less than credible.

### 4. Gaps in Treatment

Next, the ALJ found Plaintiff's symptom complaints less than credible because there were "significant gaps in the claimant's history of treatment." Tr. 24. The medical treatment a Plaintiff seeks to relieve her symptoms is a relevant

factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§ 416.929(c)(3)(iv), (v). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

As the ALJ noted at the time of the initial administrative hearing, Plaintiff had not been in counseling since November 2013, Tr. 49-50, and in January 2014, was discharged due to failure to follow through with attending appointments. Tr.25. Plaintiff later attended four sessions in the summer of 2014, but was again discharged. Tr. 25. Plaintiff contends these gaps are not "significant" and started after Plaintiff moved away from home and "no longer had an authority figure forcing her to treat her mental illness." ECF No. 17 at 14. At the hearing, the ALJ

inquired at the hearing into the gaps in treatment. Plaintiff testified that "I did a lot better when I was in counseling and doing the pills which is why I'm trying to get back into a counseling center…." Tr. 64. She explained she did not want to seek counseling at the Chas Clinic because she could only see counselors there once a week, and she preferred appointments twice a week. Tr. 65. As Plaintiff's lack of consistent counseling since November 2013 appears based upon personal preference and is inadequately explained, it was a relevant consideration bearing on Plaintiff's credibility. *See Orn*, 495 F.3d at 638 (9th Cir. 2007).

Overall, the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom claims, including pain. The ALJ made extensive credibility findings and identified multiple valid reasons supported by the record for discounting Plaintiff's statements regarding her subjective symptoms. Moreover, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly weighed the opinions of examining doctor John Arnold, Ph.D., and nonexamining doctors Donna Veraldi, Ph.D., Ellen Rozenfeld, Ed.M., Psy.D., Jerry Gardner, Ph.D., and John Robinson, Ph.D. ECF

No. 17 at 15-19.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

### 1. John Arnold, Ph.D.

Dr. Arnold prepared a psychological/psychiatric evaluation on November 20, 2014. Tr. 772-76. Dr. Arnold opined that Plaintiff was markedly limited in the ability to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; (2) adapt to

ORDER - 22

changes in a routine work setting; (3) communicate and perform effectively in a work setting; and (4) complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 774. He found a number of other moderate limitations. *Id.* "Marked" was defined on the form as "a very significant limitation on the ability to perform one or more basic work activity." *Id.*

The ALJ accorded Dr. Arnold's opinion little weight. Tr. 26. As Dr. Arnold's opinion was contradicted by the opinions of Drs. Veraldi, Rozenfeld, Gardner, and Robinson, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

a. Internal inconsistency

The ALJ discounted Dr. Arnold's opinion because it was internally inconsistent. An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. Here, the ALJ found that the assessed marked limitations were inconsistent with Dr. Arnold's clinical finding set forth on the same form of "mild" depression and anxiety, "which she stated were improving." Tr. 26. Plaintiff does not address the inconsistency and instead disputes the characterization of the impairments as

"mild," which was Dr. Arnold's finding, not the ALJ's characterization. ECF No. 17 at 16-17; Tr. 773. The Court concludes the internal inconsistency in Dr. Arnold's assessment was a specific and legitimate reason to discount the opinion.

b. Inconsistency with the medical record as a whole

Additionally, the ALJ concluded Dr. Arnold's opinion was inconsistent with "treatment notes that generally show the claimant fully alert and oriented with no deficits in attention, concentration, or memory." Tr. 26. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631. An ALJ may discredit medical opinions that are conclusory, brief, and unsupported by the record as a whole. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ described a number of treatment records in detail in the discussion of the "paragraph B" criteria and the RFC. Tr. 22 (citing Tr. 714-15, 753, 767, 876); Tr. 24-25. Among a number of treatment notes the ALJ set forth, one was from June 2013, which stated "symptoms have stabilized," "patient reports it is not difficult at all to meet home, work, or social obligations," and "patient is not anxious, has normal attention span and concentration, does not have pressured speech and does not have suicidal ideation." Tr. 618-19; Tr. 24. The

ALJ also discussed the October 2013 mental status examination note, which indicated Plaintiff had a normal thought process, good fund of knowledge, and normal memory, and it was recommended to "simplify medications" as "necessity for all of these medications in unclear." Tr. 716; Tr. 22, 25.

Plaintiff contends "Ms. Hill's treatment records do not give this impression." ECF No. 17 at 17. Plaintiff contends the record evidence of behavior in uncontrolled settings, including educational records, low GAF scores, and statements of Plaintiff's family give numerous examples of Plaintiff's difficulty in concentration, focus, taking direction, and completing tasks. ECF No. 17 at 17-18. While Plaintiff disagrees with the ALJ's consideration of the evidence, if more than one interpretation of the evidence is plausible, the Court must defer to that interpretation. The record reflects the ALJ did take into consideration Plaintiff's attention and concentration problems, according great weight to Dr. Veraldi who opined Plaintiff would be limited to simple, routine, and repetitive tasks taking into consideration the records cited by Plaintiff. Tr. 87. Though the record supports the fact Plaintiff struggled both at home and in the public school system prior to her graduation, it also reflects Plaintiff's success while attending school in the eighth grade at the Tamarack Center for nine months. While there, in the "very-structured, self-contained classroom" with a low student to teacher ratio, Plaintiff did "awesome," was "cooperative, respectful, and has a good attitude," and was

"able to work to her ability level and complete assignments regularly."  Tr. 290.

Plaintiff's argument does not warrant a reversal or remand of the ALJ's decision

because it amounts to no more than a dispute about the ALJ's interpretation of the

evidence, and "[w]here evidence is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld."  *Burch v. Barnhart*,

400 F.3d 676, 679 (9th Cir. 2005).

### 2. Nonexamining Opinions

Plaintiff generally contends that the ALJ erred in weighing the opinions of

non-examining physicians Donna Veraldi, Ph.D., Ellen Rozenfeld, Ed.M., Psy.D.,

Jerry Gardner, Ph.D. and John Robinson, Ph.D.  ECF No. 17 at 18 (including

contention as part of discussion of Dr. Arnold).  Drs. Rozenfeld and Veraldi

testified as the designated psychological experts at the administrative hearings.

Drs. Gardner and Robinson were state agency reviewing physicians.  All four

consistently opined Plaintiff was capable of simple, routine, tasks with limited

interaction with the public.  Tr. 22-23.

Plaintiff contends crediting these opinions was error because "[t]he ALJ fails

to point out what part of the record was viewed that made the reviewing doctors'

opinions more valuable," and because "[t]here is no basis for the doctors' opinions

that [Plaintiff] could carry out routine tasks and tolerate brief contact with the

public and coworkers on a sustained basis."  ECF No. 17 at 18.  While Plaintiff

may not agree with the ALJ's interpretation, it is sufficient that the ALJ's interpretation is rational and supported by substantial evidence. The overall longitudinal record paints a picture of a young individual whose anxiety and depression were exacerbated by significant situational stressors in her home life starting at an early age; she received benefit from treatment through medication and counseling to help cope with and reduce situational stressors; and during the relevant period demonstrated only moderate effects on concentration, thought processes, and affect. Substantial evidence therefore supports the ALJ's incorporation of the non-examining physicians' limitation to simple, routine, repetitive tasks with limited contact with the public and coworkers.

**D. Lay Testimony**

Plaintiff contends the ALJ did not properly consider the testimony of Plaintiff's mother, Elizabeth Hill. ECF No. 17 at 15.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. If lay testimony is rejected, the ALJ must provide reasons that are germane to each witness. *Nguyen*, 100 F.3d at 1467.

The ALJ considered the Third Party Function Report and testimony of Plaintiff's mother that described Plaintiff as nervous, irritable, angry, anxious, worried around more than two or three people, and experiencing crying spells. Tr. 101. The ALJ determined that:

> The undersigned gives little weight to Ms. Hill's statements, due to their inconsistency with the objective medical evidence and medical opinions of record. Additionally, this testimony that the claimant is unable to work is internally inconsistent with her sending the claimant out to look for work. Furthermore, Ms. Hill does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms or the frequency or intensity of unusual moods or mannerisms. More importantly, by virtue of her relationship with the claimant the undersigned cannot consider Ms. Hill to be a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges.

Tr. 26-27.

Here, the ALJ erred in discounting Ms. Hill's statements in part because of her relationship to Plaintiff. *Smolen*, 80 F.3d at 1289. However the error is harmless because the ALJ gave other "germane" reasons sufficient for discounting Ms. Hill's opinion including the objective evidence and Plaintiff's activities in searching for work. *See Valentine v. Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's improper rejection of lay testimony of witness because she was an interested party who never saw claimant at work was harmless error because there were other germane reasons for rejecting her testimony); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that inconsistency

ORDER - 28

with medical evidence is a germane reason for discounting lay witness testimony); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1163–64 (9th Cir.2008) (ALJ's specific findings related to Plaintiff's ability to perform vocational functions to find testimony incredible demonstrates the ALJ did not do so arbitrarily).

**E. Remaining Contentions**

Plaintiff also challenges the ALJ's determinations of step three, the RFC, and step five. However, Plaintiff's arguments are based entirely on the assumption that the ALJ erred in considering the medical evidence, Plaintiff's symptom claims, and the lay witness testimony. As discussed in detail above, the ALJ's evaluation of medical evidence and the ALJ's adverse credibility findings, were legally sufficient and supported by substantial evidence. Thus, the ALJ did not err in assessing step three, the RFC, or step five.

**CONCLUSION**

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED.**

2. Defendant's Motion for Summary Judgment (ECF No. 18) is **GRANTED.**

ORDER - 29

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED March 19, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 30